ARCHIS A. PARASHARAMI (SBN 331621)
archis.parasharami@skadden.com
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

MICHAEL W. McTIGUE JR. (Of Counsel)
michael.mctigue@skadden.com
MEREDITH C. SLAWE (Of Counsel)
meredith.slawe@skadden.com
ANDREW D. QUINN (Of Counsel)
andrew.quinn@skadden.com
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

*Attorneys for Defendant*
*PayPal, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| STACEY BORQUEZ, REMI RUNDZIO, NATHAN OLSON, and LANA NAVA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PAYPAL, INC. d/b/a VENMO<br><br>Defendant. | Case No. 5:26-cv-9340-NW<br><br>**DEFENDANT PAYPAL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date: February 3, 2027<br>Hearing Time: 9:00 a.m.<br>Judge: Hon. Noël Wise<br><br>Complaint filed: September 1, 2026 |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on February 3, 2027, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Noël Wise, United States District Judge, Northern District of California, located at the San Jose Courthouse, 280 South 1st Street, Courtroom 3, 5th Floor, San Jose, California 95113, Defendant PayPal, Inc. will move the Court to compel individual arbitration of Plaintiffs' claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Alicia Sterzinar ("Sterzinar Decl."), the Declaration of Andrew D. Quinn ("Quinn Decl."), the [Proposed] Order, any oral argument heard by the Court, and such other matters as the Court may consider.

DATED: October 30, 2026

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Archis A. Parasharami*
Archis A. Parasharami

*Counsel for Defendant PayPal, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ....................................................................................................2

A. Plaintiffs Allege That They Use Venmo.........................................................2

B. Plaintiffs Agreed to the Terms of Venmo's User Agreement When They Opened Their Accounts.............................................2

C. Plaintiffs Have Agreed to Arbitrate Their Disputes Multiple Times.............2

1. Plaintiffs' Original Venmo User Agreements....................................2

2. The May 23, 2022 User Agreement..................................................3

3. The Prior User Agreement Terms.....................................................4

4. Plaintiffs Received Notice of the Updated Terms Contained in the Current User Agreement in July 2026....................5

5. The Current Venmo User Agreement. ..............................................6

D. Plaintiffs' Complaint.......................................................................................8

ISSUE TO BE DECIDED ......................................................................................8

LEGAL STANDARD.............................................................................................8

ARGUMENT..........................................................................................................9

I. The FAA Applies to Plaintiffs' Agreement to Arbitrate. ..........................................9

A. Plaintiffs Agreed to Arbitrate.............................................................................9

B. Plaintiffs' Claims Fall Within the Scope of Their Agreement to Arbitrate..11

II. Plaintiffs' Unconscionability Challenges Fail. ......................................................11

A. The Arbitration Agreement Is Not Procedurally Unconscionable...............12

B. The Arbitration Agreement Is Not Substantively Unconscionable. .............14

1. The Staging Procedures Are Enforceable. ......................................14

2. Courts Routinely Enforce Agreements that Apply Retroactively.....19

3. Plaintiffs' Remaining Substantive Unconscionability Arguments Fail. ...........................................................................................21

4. Most of the Challenged Terms Are Severable. ................................23

III. Even if the Current Arbitration Agreement Were Deemed Unconscionable in Its Entirety, Plaintiffs Must Arbitrate Under Their Earlier Arbitration Agreements.....24

IV. This Action Must Be Stayed Pending Arbitration. ....................................................25

CONCLUSION......................................................................................................................25

## TABLE OF AUTHORITIES

Page(s)


*Abdallah v. Experian Information Solutions, Inc.*,
2026 WL 731133 (S.D.N.Y. Mar. 16, 2026) ....................12, 13

*Ackerberg v. Citicorp USA, Inc.*,
898 F. Supp. 2d 1172 (N.D. Cal. 2012) ....................22

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) ....................9

*In re AT&T Inc. Customer Data Security Breach Litigation*,
2026 WL 2970201 (N.D. Tex. Oct. 2, 2026) ....................21

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ....................9, 19, 21

*AT & T Technologies, Inc. v. Communications Workers of America*,
475 U.S. 643 (1986) ....................11

*Baltazar v. Forever 21, Inc.*,
62 Cal. 4th 1237 (2016) ....................14

*In re Barker*,
839 F.3d 1189 (9th Cir. 2016) ....................10

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ....................21

*Brooks v. WarnerMedia Direct, LLC*,
2024 WL 3330305 (S.D.N.Y. July 8, 2024) .................... *passim*

*Burkhardt v. Extra Space Management, Inc.*,
2025 WL 2172287 (E.D. Cal. July 30, 2025) ....................15

*Carolus v. Coinbase Global, Inc.*,
2025 WL 3033736 (N.D. Cal. Oct. 7, 2025) ....................13, 17

*Cheng v. PayPal, Inc.*,
2022 WL 126305 (N.D. Cal. Jan. 13, 2022) ....................11

*Cordero v. Coinbase, Inc.*,
2025 WL 2223495 (N.D. Cal. Aug. 5, 2025) ....................17, 22

*Curtis v. JPMorgan Chase Bank, N.A.*,
2024 WL 283474 (S.D.N.Y. Jan. 25, 2024) ....................23, 24

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................................................................................9

*Donovan v. Coinbase Global, Inc.*,
649 F. Supp. 3d 946 (N.D. Cal. 2023) ....................................................................13

*Dotson v. Amgen, Inc.*,
181 Cal. App. 4th 975 (2010) ..............................................................................14

*Evans v. PayPal, Inc.*,
2022 WL 1813993 (N.D. Cal. June 2, 2022),
*aff'd*, 2023 WL 6058490 (9th Cir. Sep. 18, 2023)...................................................11

*Fisher v. MoneyGram International, Inc.*,
66 Cal. App. 5th 1084 (2021) ..............................................................................13

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
97 F.4th 1190 (9th Cir. 2024) ...............................................................................9

*Fort Bend County v. Davis*,
587 U.S. 541 (2019)...................................................................................22

*Garcia v. Citibank, N.A.*,
2019 WL 2902499 (C.D. Cal. Feb. 13, 2019)..........................................................20

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*,
2025 WL 478178 (E.D. Pa. Feb. 12, 2025),
*appeal filed*, No. 25-2221 (3d Cir. July 8, 2025).....................................................15

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)........................................................................................9

*Hakopian v. Mukasey*,
551 F.3d 843 (9th Cir. 2008) ...............................................................................10

*Heckman v. Live Nation Entertainment, Inc.*,
120 F.4th 670 (9th Cir. 2024),
*cert. denied*, 146 S. Ct. 96 (2025) ......................................................16, 17, 20

*Ireland-Gordy v. Tile, Inc.*,
2026 WL 594859 (9th Cir. Mar. 3, 2026)..............................................................20

*Jones v. Starz Entertainment, LLC*,
129 F.4th 1176 (9th Cir. 2025) ......................................................15, 17, 23

*Kennedy v. Lyft, Inc.*,
No. CGC-25-630920 (Cal. Super. Ct., S.F. Cnty. May 19, 2026).................................16

*Kindred Nursing Centers Limited Partnership v. Clark*,
581 U.S. 246 (2017)....................19

*Lai Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*,
180 F. Supp. 3d 236 (S.D.N.Y. 2016)....................20, 23

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)....................11, 19

*Lohbeck v. Amazon.com Services, LLC*,
2026 WL 2455257 (E.D. Cal. Aug. 21, 2026)....................22

*Lucero v. PayPal, Inc.*,
725 F. Supp. 3d 111 (D. Mass. 2024)....................11

*MacClelland v. Cellco Partnership*,
609 F. Supp. 3d 1024 (N.D. Cal. 2022)....................18

*Majidi-Ahy v. ClassPass, Inc.*,
2026 WL 585465 (C.D. Cal. Feb. 11, 2026)....................20

*McGrath v. DoorDash, Inc.*,
2020 WL 6526129 (N.D. Cal. Nov. 5, 2020)....................15, 18

*Meadows v. Cebridge Acquisition, LLC*,
132 F.4th 716 (4th Cir. 2025)....................21

*Meyer v. Uber Technologies, Inc.*,
868 F.3d 66 (2d Cir. 2017)....................10

*Minton v. Intercontinental Terminals Co.*,
2023 WL 11857612 (S.D. Tex. Sep. 11, 2023)....................15

*Nezri v. PayPal, Inc.*,
606 F. Supp. 3d 985 (C.D. Cal. 2022)....................11

*Oberstein v. Live Nation Entertainment, Inc.*,
60 F.4th 505 (9th Cir. 2023)....................10

*Oblix, Inc. v. Winiecki*,
374 F.3d 488 (7th Cir. 2004)....................19

*Olsen v. Charter Communications, Inc.*,
2019 WL 3779190 (S.D.N.Y. Aug. 9, 2019)....................10, 24, 25

*Ortiz v. T-Mobile USA, Inc.*,
2026 WL 712958 (C.D. Cal. Mar. 9, 2026)....................24

*Pandolfi v. AviaGames, Inc.*,
2024 WL 4051754 (N.D. Cal. Sep. 4, 2024),
*aff'd*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025),
*cert. denied*, 146 S. Ct. 2657 (2026) ....................16, 17, 18

*Picha v. Gemini Trust Co.*,
2024 WL 967182 (S.D.N.Y. Mar. 5, 2024) ....................20

*Pilon v. Discovery Communications, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025).................... *passim*

*Plazza v. Airbnb, Inc.*,
289 F. Supp. 3d 537 (S.D.N.Y. 2018)....................20

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) ....................12, 14, 24

*Ragone v. Atlantic Video at Manhattan Center*,
595 F.3d 115 (2d Cir. 2010)....................9, 12

*Ramirez v. Charter Communications, Inc.*,
16 Cal. 5th 478 (2024) ....................24

*Rejuso v. Brookdale Senior Living Communities, Inc.*,
2018 WL 6173384 (C.D. Cal. Nov. 13, 2018)....................24

*Rolle v. VisionPro Connections Inc.*,
2025 WL 1309418 (E.D.N.Y. Jan. 31, 2025) ....................24

*Ruiz v. CarMax Auto Superstores, Inc.*,
2024 WL 1136332 (C.D. Cal. Jan. 18, 2024) ....................16

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. July 31, 2023)....................10

*Sanchez v. Valencia Holding Co.*,
353 P.3d 741 (Cal. 2015) ....................9, 12

*SCPS LLC v. Kind Law*,
2026 WL 96898 (C.D. Cal. Jan. 8, 2026) ....................20

*Serpa v. California Surety Investigations, Inc.*,
215 Cal. App. 4th 695 (2013) ....................21

*Shnayderman v. PayPal, Inc.*,
2023 WL 2647898 (S.D.N.Y. Mar. 27, 2023) ....................11, 13

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....................25

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith*,
59 F. Supp. 2d 1067 (S.D. Cal. 1999) .......... 24

*In re TikTok, Inc. Consumer Privacy Litigation*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) .......... 21

*Trudeau v. Google LLC*,
816 F. App'x 68 (9th Cir. 2020) .......... 20

*Whalen v. NBA Properties, Inc.*,
2025 WL 3013144 (S.D.N.Y. Oct. 28, 2025) .......... 12

*In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Technology & Versys Femoral Head Products Liability Litigation*,
2021 WL 5963392 (S.D.N.Y. Dec. 16, 2021) .......... 15

## STATUTES

9 U.S.C. § 2 .......... 9

9 U.S.C. § 3 .......... 25

Cal. Civ. Code § 1599 .......... 24

## RULES

C.D. Cal. Local Rule 7-3 .......... 22

## OTHER AUTHORITIES

Complaint, *Ireland-Gordy v. Tile, Inc.*,
No. 3:23-cv-04119-RFL (N.D. Cal. filed Aug. 14, 2023), Dkt. No. 1 .......... 20

CPR Dispute Resolution Services, *Operating Principles*,
https://drs.cpradr.org/about/operating-principles-for-cpr-dispute-resolution-services-llc .......... 18

Transcript, *Tubi, Inc. v. Keller Postman LLC*,
No. 1:24-cv-01616 (D.D.C. Dec. 19, 2024), Dkt. No. 29 .......... 15

U.S. JPML, *Statistical Analysis of Multidistrict Litigation Under 28 U.S.C. § 1407 Fiscal Year 2025* (2026),
https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Fiscal_Year_2025_Statistical_Analysis.pdf .......... 15

## PRELIMINARY STATEMENT

Plaintiffs' claims belong in arbitration.[1] Under the Venmo User Agreement, Plaintiffs and PayPal, Inc. ("PayPal") plainly agreed to arbitrate this dispute. In their Complaint, Plaintiffs concede they agreed to the Arbitration Agreement in the current Venmo User Agreement, which became effective August 24, 2026 (Compl. Ex. B, the "Current User Agreement"). Compl. ¶¶ 64-77. But despite their contractual commitment to arbitrate, they now seek to evade that obligation and litigate claims that belong in arbitration.

In resisting arbitration, Plaintiffs contend that the Arbitration Agreement is unconscionable, focusing on its staging procedures for managing large numbers of coordinated arbitrations. But, as the Complaint implies, while carefully avoiding saying so, Plaintiffs' true objective in bringing this Complaint and challenging the Arbitration Agreement is to preserve counsel's ability to pursue mass arbitrations against PayPal under a superseded arbitration agreement.

What Plaintiffs tellingly fail to mention is that courts have repeatedly upheld arbitration provisions that included substantially similar staging procedures. *See, e.g.*, *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 295-98 (S.D.N.Y. 2025); *see also* pages 14-16 *infra* (discussing additional cases). The reason is straightforward: the Arbitration Agreement's new staging provisions eliminate Plaintiffs' counsel's ability "to cause massive fees to be assessed on [Defendant], thereby enabling [the firm] to extract a windfall settlement untethered to the merit of those claimants' claims." *Id.* at 297 (citation omitted). A "procedure that prevents [the] manipulation of the arbitral forum's fee structure . . . is not so substantively unreasonable as to be unconscionable." *Id.*

As discussed below, the mass arbitration procedures are modeled after the federal courts' approach to multidistrict litigation ("MDL") proceedings: the parties agree to arbitrate 50 cases simultaneously, with global mediation after those arbitrations (at PayPal's expense) to try to resolve the remaining cases. If any remain, another 50 cases are arbitrated, followed by another mediation (again at PayPal's expense). If any cases are still unresolved, the parties may opt to proceed in court

[1] As discussed in PayPal's concurrently filed motion to transfer (Dkt. No. 24), this Court need not reach this arbitration motion because the parties have agreed to a forum-selection clause that requires disputes over arbitrability to be decided by a court in New York.

or through continued individual arbitrations. Plaintiffs do not identify any case where a court—let alone one in this Circuit—refused to enforce an arbitration provision like this one.

## BACKGROUND

### A. Plaintiffs Allege That They Use Venmo.

Venmo, a service of PayPal, is a peer-to-peer mobile payments service that enables users to send and receive money electronically. Compl. ¶ 1; Sterzinar Decl. ¶ 5. The four named Plaintiffs in this case allege they each used the Venmo platform to send and receive payments for personal or work-related reasons. Compl. ¶¶ 17, 26, 34, 45. Plaintiff Borquez also alleges she uses Venmo-branded debit and credit cards for personal transactions, and Plaintiff Nava alleges that she uses a Venmo-branded debit card and receives her payroll payments through Venmo. *Id.* ¶¶ 18, 46. All four Plaintiffs allege that, to open and use their Venmo accounts, they were required to provide their name, email address, telephone number, and banking information. *Id.* ¶¶ 19, 27, 35, 47.

### B. Plaintiffs Agreed to the Terms of Venmo's User Agreement When They Opened Their Accounts.

When all four Plaintiffs opened their Venmo accounts, they completed a registration process that required new users to accept the Venmo User Agreement. Sterzinar Decl. ¶¶ 7, 35, 38, 41, 44. Users could not create an account without agreeing to its terms. *Id.* ¶ 10. Plaintiffs also agreed that "[b]y continuing to use our services after any changes to this user agreement become effective, you agree to abide and be bound by those changes. If you do not agree with any changes to this user agreement, you may close your account." *Id.* Ex. 3 at 2; *id.* Ex. 4 at 2; *id.* Ex. 1 at 19 (materially similar, providing "By using the Venmo Services after a new Agreement has been posted, you agree to the revised Agreement"). Plaintiffs do not dispute that they are bound by the Venmo User Agreement, or that they agreed to arbitration when they obtained their Venmo accounts.

### C. Plaintiffs Have Agreed to Arbitrate Their Disputes Multiple Times.

Plaintiffs have repeatedly agreed to arbitration, both when they first opened their Venmo accounts (see the preceding section), and each time they were presented with updates to the Venmo User Agreement and continued using Venmo thereafter.

#### 1. Plaintiffs' Original Venmo User Agreements.

When they first obtained Venmo accounts, the then-current versions of the Venmo User Agreements informed Plaintiffs that they were agreeing to resolve disputes by arbitration on an individual basis. The arbitration provision, with the heading "Law and Forum for Disputes; **Arbitration**" (2016) or "**Agreement to Arbitrate**" (2019 and 2020), provided (Sterzinar Decl. Ex. 1 at 16; *id.* Ex. 2 at 20; *id.* Ex. 3 at 20; *id.* Ex. 4 at 23):

> ANY CLAIMS ARISING OUT OF, RELATING TO, OR CONNECTED WITH THIS USER AGREEMENT MUST BE ASSERTED INDIVIDUALLY IN BINDING ARBITRATION CONDUCTED BY A SINGLE ARBITRATOR WITH EXPERIENCE IN CONSUMER ONLINE PAYMENT SERVICES DISPUTES ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") IN ACCORDANCE WITH ITS COMMERCIAL ARBITRATION RULES AND THE AAA SUPPLEMENTARY PROCEDURES FOR CONSUMER-RELATED DISPUTES.

**2. The May 23, 2022 User Agreement.**

On or around April 22, 2022, PayPal notified all Venmo users by email that it was updating the arbitration provision in the user agreement. Sterzinar Decl. ¶ 12. PayPal informed users that, "[u]nder the revised arbitration provision, you will, with limited exception, still be required to submit claims you have against PayPal in connection to the Venmo service to binding and final arbitration unless you opt out of the Agreement to Arbitrate by following the directions in the Venmo User Agreement by June 22, 2022." *Id.*, Figure 1. Venmo users could "choose to reject this Agreement to Arbitrate ('opt-out') by mailing . . . a written opt-out notice" postmarked no later than June 22, 2022 (for existing Venmo users), or 30 days after a new user accepted the May 23, 2022 user agreement for the first time. *Id.* ¶ 16. The May 23, 2022 user agreement also informed users that it would provide at least 21 days' notice for future amendments that would "reduce your rights or increase your responsibilities," and that "[b]y continuing to use our services after any changes to this user agreement become effective, you agree to abide and be bound by those changes." *Id.* Ex. 6 at 2. It further provided that "[i]f you do not agree with any changes . . . you may close your account." *Id.* Plaintiffs continued using Venmo after the effective date (*id.* ¶¶ 36, 39, 42, 46), thereby agreeing

to the terms of the May 23, 2022 user agreement.[2]

**3. The Prior User Agreement Terms.**

Under the terms of the User Agreement in effect through August 23, 2026 (the "Prior User Agreement") (*see* Compl. ¶ 65 & Ex. C), all Plaintiffs agreed "to resolve disputes by arbitration on an individual basis" (*id.* Ex. C at 2):

> This user agreement is a contract between you and PayPal, Inc. governing use of your Venmo account and the Venmo services. You must be in the United States and have a U.S. bank account to use the Venmo services.
>
> You agree to comply with all of the terms and conditions in this user agreement. The terms include an agreement to resolve disputes by arbitration on an individual basis.

As the terms make clear, Plaintiffs' use of Venmo was conditioned on their acceptance of the terms and conditions in the Prior User Agreement.

The arbitration provision in the Prior User Agreement explained: "You and PayPal each agree that **any and all disputes or claims that have arisen or may arise between you and PayPal** (including claims or disputes that arise out of or relate to the Venmo services or your Venmo account . . .) . . . **shall be resolved exclusively through final and binding arbitration** or in small claims court." Compl. Ex. C at 62 (emphasis added). The provision further explained that:

- Prior to bringing any dispute or claim, users were required to submit a "Notice of Dispute" (*id.* at 63);
- Claims must proceed "only on an individual basis"; users may not proceed "as a plaintiff or class member in any purported class or representative action or proceeding" (*id.*);
- Any arbitration would be administered by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules (*id.* at 64);
- If a court decided that "any part of this Agreement to Arbitrate is invalid or unenforceable, the other parts of this Agreement to Arbitrate shall still apply" (*id.* at 66); and
- New users could choose to "opt-out" of the Agreement to Arbitrate by mailing a written opt-out notice (*id.* at 66-67).

Like the May 2022 User Agreement, the Prior User Agreement provided that PayPal would

[2] While PayPal updated the user agreement several times after May 2022, the arbitration provisions remained materially identical to those in the Prior User Agreement. *See* Sterzinar Decl. ¶ 19.

notify users of "amendments to this Agreement to Arbitrate by providing notice through email at least 21 days before the effective date of the amendments," and that if users did not agree to the amendments, they could close their Venmo accounts within that 21-day period. *Id.* at 2, 67.

Here, none of the Plaintiffs allege that they opted out of the arbitration provision contained in the May 2022 user agreement (the terms of which remained materially identical until the revisions in the Current User Agreement). Nor do they deny agreeing to the Prior User Agreement. To the contrary, Plaintiffs admit that the arbitration provision in the Prior User Agreement governed their relationship through August 23, 2026. *See* Compl. ¶ 65 (the Current User Agreement removed "rights users held as recently as August 23, 2026," citing the Prior User Agreement).

**4. Plaintiffs Received Notice of the Updated Terms Contained in the Current User Agreement in July 2026.**

On or around July 22, 2026, Plaintiffs received notice that PayPal had updated the Venmo User Agreement (Compl. ¶ 64, the "July 2026 Notice"), and that the Current User Agreement would become effective on August 24, 2026. *See also* Sterzinar Decl. ¶ 22. As Figure 1 of Plaintiffs' Complaint (also attached as Exhibit 8 to the Declaration of Alicia Sterzinar) shows, the July 2026 Notice email "included updates to the arbitration clause" (Compl. ¶ 64), including a bullet summary of the updates. The email also linked to the Current User Agreement and noted that if users did not wish to accept the changes, then they would need to close their account before the effective date.

The July 2026 Notice informed users, in bold text and in summary bullets, that:

- "We are modifying the required mandatory informal dispute resolution process."
- "We are updating the arbitration procedures, including adding procedures for mass arbitrations and replacing AAA with JAMS as the arbitration provider."
- "We are specifying that the state and federal courts in New York County, New York, will have exclusive jurisdiction over any disputes . . . that are not subject to arbitration or any action involving the applicability or enforceability of the Arbitration Agreement or any of its parts."
- "We are specifying that the updates will apply to all disputes between you and Venmo regardless of when they arose."

While Plaintiffs assert that aspects of the arbitration agreement in the Current User Agreement are unconscionable (*see* Compl. ¶¶ 64-77), they do not dispute that they (i) received the

July 2026 Notice; (ii) were notified of the changes to their agreement to arbitrate; and (iii) were informed that if they chose to decline the new terms, they could close their accounts prior to the August 24, 2026 effective date. Nor do Plaintiffs allege that they wished to close their accounts or that they ceased using Venmo's services after the effective date. While Plaintiffs contend that closing one's account can be "onerous" or "complex," none of the named Plaintiffs allege anywhere in the Complaint that they made any attempt to close their accounts by the effective date. *See* Compl. ¶¶ 42, 69. Notably, according to PayPal's records, numerous individuals did in fact close their Venmo accounts between July 16, 2026 and August 23, 2026. Sterzinar Decl. ¶ 33. Users who wished to close their accounts were able to do so.

**5. The Current Venmo User Agreement.**

The first page of the Current User Agreement highlights (in bold text) that Venmo's terms of use "**include an agreement to resolve most disputes by arbitration on an individual basis**." Compl. Ex. B at 1. The Current User Agreement includes a provision entitled "Dispute Resolution (Including Arbitration Agreement, Class Action Waiver, and Jury Trial Waiver)." *Id.* at 57-67. That provision encourages users to "read this Dispute Resolution section carefully," noting that it "affects your legal rights" and "[a]mong other things, it" (*id.* at 57):

- "Impacts how claims between you and us are resolved, including your and our agreement to resolve most disputes through individual arbitration . . . ."
- "Includes a class action waiver pursuant to which you and we agree to waive the right to bring or to participate in a class action lawsuit . . . ."
- "Requires you and us to attempt to informally resolve claims before commencing arbitration or initiating an action in small claims court."
- "Allows you to opt-out of the Arbitration Agreement by following the Opt-Out Procedure and sending us a written notice postmarked no later than 30 days after the date you accept the user agreement for the first time."

The provision explains that the FAA applies (*id.* at 59) and includes the following terms:

- **Binding individual arbitration**. "You and PayPal each agree that **any and all disputes or claims** arising out of or relating to the user agreement, the Venmo services, your Venmo account . . . or your relationship with PayPal, whether based in contract, tort, fraud, misrepresentation or any other legal theory ('Dispute'), shall be resolved through

final and binding arbitration . . . ." *Id.* at 58-59 (emphasis added).[3]

- **Opt-out for new users**. "You can choose to opt-out of the Arbitration Agreement by following the Opt-Out Procedure and sending us a written notice postmarked no later than 30 days after the date you accept the user agreement for the first time." *Id.* at 66-67.

- **Informal dispute resolution process**. A party who wishes to pursue a claim must first send a "Notice of Dispute" so that the parties can "negotiate in good faith in an effort to informally resolve" their dispute; all statutes of limitation are tolled "from the date of receipt of a Notice of Dispute through the conclusion of this Process." *Id.* at 59-60.

- **Individualized arbitrations before JAMS**. Arbitration must be administered under then-current JAMS rules; any award "**shall have no preclusive effect** in any other arbitration or proceeding involving non-identical parties." *Id.* at 61-63 (emphasis added).

- **Prior arbitration agreements superseded by continued use of the account**. "You agree that any filed or pending arbitrations between you and PayPal will be subject to this Arbitration Agreement and not to any prior Agreement to Arbitrate . . . . You further agree that notwithstanding any provision in any prior Agreement to Arbitrate to the contrary, this Arbitration Agreement replaces and supersedes any prior Agreement to Arbitrate you had with PayPal and will govern and apply to all Disputes, including all Disputes that arose before the effective date of this Arbitration Agreement. **If you do not wish to have this Arbitration Agreement apply to you and your Disputes, then you must close your PayPal account prior to the effective date**." *Id.* at 67 (emphasis added).

The Current User Agreement also contains provisions governing a "Mass Arbitration," which occurs when "25 or more similar Disputes . . . are asserted against PayPal by the same or coordinated counsel or are otherwise coordinated." In that event, the clause provides for a two-stage process:

- **Stage One**: the first 50 claims (each side selects 25) may proceed to arbitration followed by a global mediation.

- **Stage Two**: 50 more claims proceed to arbitration followed by a second global mediation.

If the remaining claims have not been resolved after the second mediation, the parties have two options. Option One allows either party to opt out of arbitration and for the remaining claims to be litigated in court; Option Two provides for continuing staged proceedings under which 100 cases

---

[3] The Current User Agreement confirms that the issue of arbitrability is for courts: "The arbitrator shall decide all issues **except** the following, which are for a court of competent jurisdiction to decide: (1) issues reserved for a court in the user agreement; (2) issues related to the scope, validity, and enforceability of the Arbitration Agreement, class action waiver, jury trial waiver, or any provisions of the Dispute Resolution section; (3) issues related to arbitrability; and (4) issues related to whether this or a different version of the user agreement applies . . . ." Compl. Ex. B at 58-59.

may be arbitrated per stage, the cases are randomly selected, and further mediation is optional. Compl. Ex. B at 63-65. Any applicable limitations periods (including statutes of limitations) are tolled from when the dispute is first submitted to JAMS and through the staging process. *Id.* at 64.

Finally, the agreement's "Governing Law and Venue" clause provides that New York law governs any disputes and that courts in New York have exclusive jurisdiction "over any action involving the applicability or enforceability of the Arbitration Agreement or . . . its parts." *Id.* at 72.

**D. Plaintiffs' Complaint.**

Plaintiffs filed this lawsuit on September 1, 2026, seeking to represent a nationwide class of persons (i) who used the Venmo Platform; (ii) had their privacy settings set to private or had at least one transaction set to private; (iii) whose personal identifying information ("PII") was allegedly disclosed, transmitted, made accessible to, or intercepted by, third parties; and (iv) have not filed a demand for arbitration. Compl. ¶ 144. Plaintiffs also seek to represent a California subclass of Venmo users whose PII was allegedly disclosed to third parties. *Id.* Plaintiffs allege that, although their transaction settings were set to "Private," their transaction data and PII were nonetheless disclosed to third parties through tracking technology. *Id.* ¶ 8. Plaintiffs assert claims for (1) violation of the federal Electronic Communications Privacy Act, 18 U.S.C. § 2510; (2) intrusion upon seclusion; (3) invasion of privacy pursuant to Article I of the California Constitution; violations of (4) Section 631 and (5) Section 632 of the California Invasion of Privacy Act; (6) Section 502 of the California Comprehensive Data Access and Fraud Act; (7) the California Unfair Competition Law; (8) unjust enrichment; (9) negligence under the Gramm-Leach-Bliley Act; and (10) California Financial Information Privacy Act. *Id.* ¶¶ 157-285.

## ISSUE TO BE DECIDED

Should the Court compel arbitration of Plaintiffs' claims on an individual basis and stay this action pursuant to Section 3 of the Federal Arbitration Act until arbitrations are completed?

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

of any contract." 9 U.S.C. § 2. The FAA was enacted to "reverse the longstanding judicial hostility to arbitration agreements" and place "arbitration agreements [on] the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Because Congress has expressed a strong public policy favoring arbitration, courts must "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Indeed, there is "no place for the exercise of discretion by a district court" under the FAA, which "mandates that [district courts] *shall* direct the parties to proceed to arbitration." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1193-94 (9th Cir. 2024) (quoting *Dean Witter*, 470 U.S. at 218). The party resisting arbitration bears the burden of showing that an agreement to arbitrate is unconscionable. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121-22 (2d Cir. 2010); *Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 748-49 (Cal. 2015). Plaintiffs cannot meet their burden here.

## ARGUMENT

### I. The FAA Applies to Plaintiffs' Agreement to Arbitrate.

The FAA applies to any arbitration agreement that is (i) in writing and (ii) part of "a contract evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2. Here, the parties agreed that the Current User Agreement (a written contract) "is a transaction in interstate commerce and that this Arbitration Agreement will be interpreted and enforced in accordance with the substantive and procedural provisions of the FAA and federal arbitration law (not state arbitration law)." Compl. Ex. B at 59; *see also id.* Ex. C at 62 ("The [FAA] governs the interpretation and enforcement of this Agreement to Arbitrate."). And the subject matter of the agreement—financial transactions via a mobile Internet application—plainly involves interstate commerce within the FAA's meaning. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995) (interpreting the phrase "'involving commerce' as broadly as the words 'affecting commerce'"). Thus, the issues are (i) whether a valid agreement to arbitrate exists; and (ii) whether the claims fall within the scope of that agreement.

#### A. Plaintiffs Agreed to Arbitrate.

As detailed above, Plaintiffs repeatedly agreed to arbitrate their disputes regarding Venmo,

both when they opened their accounts and when they continued to use Venmo's services after receiving notice of updates to the agreement. *See* pages 2-6, *supra*. In their Complaint, Plaintiffs nowhere deny that they accepted the Arbitration Agreement in the Current User Agreement. And in any event, by alleging that the Current User Agreement is the "operative" one, Plaintiffs have conceded that they agreed to it. *See* Compl. ¶ 63 (the "**operative**" Current User Agreement "provides that all disputes against Defendants shall be brought in arbitration." (emphasis added)). *See also Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008) ("Allegations in a complaint are considered judicial admissions."); *In re Barker*, 839 F.3d 1189, 1195 (9th Cir. 2016) (such admissions "dispens[e] wholly with the need for proof of the [admitted] fact" (citation omitted)).

Moreover, a party is bound by an arbitration agreement where (i) "the notice of the arbitration provision was reasonably conspicuous" and (ii) "manifestation of assent [is] unambiguous as a matter of law." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017); *accord Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023).[4] A user has "constructive notice" of an arbitration clause sufficient to satisfy the conspicuous notice requirement "[a]s long as the hyperlinked text [to the terms containing the clause] was itself reasonably conspicuous." *Meyer*, 868 F.3d at 79. Here, Plaintiffs cannot dispute that they received reasonably conspicuous notice of Venmo's updated terms of use and that they continued to use Venmo's services thereafter. *See* pages 5-6, *supra*. It is well established that "a contract may be formed where users receive sufficient inquiry notice of a website's terms of use via email and thereafter continue to use the site." *Brooks v. WarnerMedia Direct, LLC*, 2024 WL 3330305, at *11 (S.D.N.Y. July 8, 2024) (collecting cases); *see also Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) ("[E]mails followed by continued use is sufficient to establish assent."); *Olsen v. Charter Commc'ns, Inc.*, 2019 WL 3779190, at *6 (S.D.N.Y. Aug. 9, 2019) ("[P]laintiffs manifested their assent to the Updated Terms" where "[t]hey paid their June and July billing statements without objection, and they continued to accept [defendant's] internet services afterwards"). For similar reasons, courts—including in this Circuit—have repeatedly held that PayPal and Venmo users have entered into

[4] As discussed in more detail below, the parties disagree about whether New York or California law applies, but as to questions of contract formation, the result is the same under either state's law.

contracts containing valid arbitration agreements.[5] The Court should do the same here.

**B. Plaintiffs' Claims Fall Within the Scope of Their Agreement to Arbitrate.**

In addition, Plaintiffs' claims are covered by the Arbitration Agreement. "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability," and "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted). The Supreme Court has "repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019).

The Arbitration Agreement broadly defines "Dispute" to include "**any and all** disputes or claims arising out of or relating to the user agreement, the **Venmo services**, your Venmo account . . . or **your relationship with PayPal**, whether based in contract, tort, fraud, misrepresentation or any other legal theory." Compl. Ex. B at 58 (emphasis added). All of Plaintiffs' claims arise from their use of "the Venmo services" and their "relationship with PayPal." *See, e.g.*, *Cheng*, 2022 WL 126305, at *3 (claims arising from PayPal's platform services fall within scope of similarly worded agreement to arbitrate). Accordingly, they are well within the coverage of the provision.

**II. Plaintiffs' Unconscionability Challenges Fail.**

Plaintiffs cannot meet their burden of showing that their arbitration agreement is unconscionable under either New York law, which governs here under the contract's choice-of-law provision, or California law (which Plaintiffs contend applies).[6] Under New York and California

[5] *See, e.g.*, *Evans v. PayPal, Inc.*, 2022 WL 1813993, at *1 (N.D. Cal. June 2, 2022) (compelling arbitration pursuant to 2012 updates to PayPal user agreement that included an arbitration clause and "specifie[d] that continued use of PayPal's services after the effective date of changes to the [User Agreement] constitutes agreement to the changes"), *aff'd*, 2023 WL 6058490 (9th Cir. Sep. 18, 2023); *Cheng v. PayPal, Inc.*, 2022 WL 126305, at *4-5 (N.D. Cal. Jan. 13, 2022) (PayPal user agreement was a presumptively valid clickwrap agreement and not unconscionable); *Nezri v. PayPal, Inc.*, 606 F. Supp. 3d 985, 995-96 (C.D. Cal. 2022) (Delaware and California law permit banks to unilaterally amend credit agreements to add arbitration provisions); *Lucero v. PayPal, Inc.*, 725 F. Supp. 3d 111, 113-15 (D. Mass. 2024) (compelling arbitration pursuant to provisions of updated user agreement); *Shnayderman v. PayPal, Inc.*, 2023 WL 2647898, at *4 (S.D.N.Y. Mar. 27, 2023) (upholding arbitration clause as enforceable where plaintiff opened his account in 2017, did not mail in an opt-out notice, and regularly used his account until July 2021, after it had been updated).

[6] Under the contract, New York law applies. *See* Compl. Ex. B at 72 ("[T]he laws of the State of New York, without regard to principles of conflict of laws, will govern this user agreement and any

law, a party challenging an agreement generally must demonstrate "**both** procedural and substantive unconscionability." *Pilon*, 769 F. Supp. 3d at 296 (emphasis added) (citation omitted); *see also Ragone*, 595 F.3d at 121-22; *Sanchez*, 353 P.3d at 748-49. Here, Plaintiffs cannot establish either procedural or substantive unconscionability—much less both.

**A. The Arbitration Agreement Is Not Procedurally Unconscionable.**

First, Plaintiffs complain that the Current User Agreement is a contract of adhesion "between parties of unequal relative bargaining positions." Compl. ¶ 75. "But in New York, being offered contract terms on a 'form . . . offered on a take-it-or-leave it basis' is generally 'insufficient to render the contract unconscionable, particularly when the [party charging unconscionability] had the ability' to take its business elsewhere." *Pilon*, 769 F. Supp. 3d at 296 (citation omitted) (collecting cases); *see also Abdallah v. Experian Info. Sols., Inc.*, 2026 WL 731133, at *12 (S.D.N.Y. Mar. 16, 2026) (the "fact that an arbitration agreement was offered on a 'take it or leave it' basis is insufficient to render the agreement procedurally unconscionable"); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261-62 (9th Cir. 2017) (explaining that the "adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most" under California law). Plaintiffs complain that "many users of the Venmo Platform rely on the platform for both personal and professional purposes" (Compl. ¶ 42), but that is true of virtually any widely-used platform. To be sure, Venmo is a convenient and user-friendly method of sending and receiving money, but Plaintiffs do not dispute in the Complaint that alternatives exist (ranging from other online financial service providers to online banks to cash or checks). *Cf. Pilon*, 769 F. Supp. 3d at 296 (Plaintiff "was free to take his business to a different streaming service"); *Abdallah*, 2026 WL 731133, at *12 ("Plaintiff claims neither that he was required to use [Defendant's] services, nor that [Defendant] used high-

---

claim or dispute that has arisen or may arise between you and PayPal regarding your . . . use of the Venmo services."); *see also* Compl. Ex. C at 73 (Prior User Agreement governed by New York law); *Pilon*, 769 F. Supp. 3d at 293 (applying New York law and explaining that "once the parties have formed a valid agreement, they may select a particular state's law to govern challenges to its enforceability"); *Ragone*, 595 F.3d at 121 (applying New York law because "the arbitration agreement at issue contains a choice of law clause which provides that New York law will govern the agreement's construction and enforcement"). But even if California law applied, Plaintiffs' unconscionability challenge would fail. *See, e.g.*, *Whalen v. NBA Props., Inc.*, 2025 WL 3013144, at *3-4 (S.D.N.Y. Oct. 28, 2025) (declining to resolve choice-of-law issue where arbitration provisions were not unconscionable under either New York or California law).

pressure tactics to coerce his acceptance."); *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1096 (2021) ("There can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices." (citation omitted)); *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 953 (N.D. Cal. 2023) ("[A]ccess to reasonable market alternatives" is relevant to procedural unconscionability).

Second, Plaintiffs argue that the Current User Agreement is a "complex, 76-page" document that is "difficult for ordinary laypersons to understand" (Compl. ¶ 75), yet they do not allege being unable to understand its terms. *See Pilon*, 769 F. Supp. 3d at 296. Moreover, the Prior User Agreement—which Plaintiffs allege gave them "core consumer protections" through August 23, 2026 (Compl. ¶ 65)—was of similar length and complexity. *See id.* Ex. C. In addition, the Current User Agreement highlights the agreement to arbitrate from the outset—including through boldface language and a clear, bold heading. In addition, the July 2026 Notice specifically identified and summarized the changes to the arbitration agreement. *See* page 5, *supra*; *see Abdallah*, 2026 WL 731133, at *12 (rejecting argument that clause was buried within arbitration provision where it was contained within a clearly titled section and set out in a new paragraph with the same color and font as all other provisions); *see also Shnayderman*, 2023 WL 2647898, at *4 (upholding PayPal arbitration clause that was "neither inconspicuous nor buried in the User Agreement's terms"; rather, it was "clearly marked with the title 'Agreement to Arbitrate'"); *Carolus v. Coinbase Glob., Inc.*, 2025 WL 3033736, at *13 (N.D. Cal. Oct. 7, 2025) (distinguishing cases in which terms were "presented in small, light grey font . . . [and] there is no bolding or underl[in]ing to call out any terms, including . . . the delegation clause and bellwether provision" (citation omitted)).

Third, Plaintiffs allege that even if they "had the opportunity to read and understand the User Agreement"—as they did here (*see* pages 5-6, *supra*)—the "staged bellwether provision" is procedurally unconscionable "because it constitutes procedural surprise." Compl. ¶ 74. But the contention that the staging requirements are "surpri[sing]" has nothing to do with procedural unconscionability; instead, their complaints go to the substantive fairness of those requirements. That is an argument about *substantive* unconscionability—and for the reasons explained below (at

pages 14-19), the argument is misguided.

Accordingly, because the Arbitration Agreement is not procedurally unconscionable, Plaintiffs' unconscionability challenge fails without the need to consider substantive unconscionability.[7]

**B. The Arbitration Agreement Is Not Substantively Unconscionable.**

That said, Plaintiffs also do not meet their burden of establishing substantive unconscionability. Courts in New York have repeatedly rejected precisely the same arguments raised by Plaintiffs here under both New York and California law. *See, e.g.*, *Pilon*, 769 F. Supp. 3d at 297 (rejecting arguments that arbitration provisions in new agreement were substantively unconscionable under New York law "because they apply retroactively, impose notice and affidavit requirements, stage the processing of claims, and require opt-out[s] to proceed to litigation following the staged claim-resolution process"); *Brooks*, 2024 WL 3330305, at *17-18 (rejecting unconscionability challenge to arbitration agreement with similar staging procedures under California law).

**1. The Staging Procedures Are Enforceable.**

a. *Numerous Courts Have Recently Upheld Similar Staging Procedures.*

First, Plaintiffs' attacks on the Current User Agreement's staging procedures fall short. Compl. ¶¶ 66(D), 71-73. Numerous courts have recently rejected unconscionability challenges to similar staging provisions. *Pilon* is instructive; there, the court held that even if the staging provisions required consumers "to proceed in batches, **that does not abridge consumers' substantive rights in any way or require them to do more than what is often required in ordinary (or multi-district) litigation,** where complicated submissions and delays are common." 769 F. Supp. 3d at 297 (emphasis added). Indeed, the Current User Agreement—like the provision at issue in *Pilon*—simply "reverts to a procedure that prevents th[e] manipulation of the arbitral forum's fee structure"—thus preventing plaintiffs' firms from "extract[ing] a windfall settlement untethered to the merit[s] of those claimants' claims." *Id.* For similar reasons, other courts have

---

[7] Even if California law applied, any degree of procedural unconscionability due to the use of a standard form contract would be minimal. *See Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 981 (2010) (use of a standard form amounts to only a "low degree" of procedural unconscionability); *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) (standard form contracts are "indispensable facts of modern life that are generally enforced"); *Poublon*, 846 F.3d at 1261-62.

upheld provisions like PayPal's. *See, e.g.*, *Brooks*, 2024 WL 3330305, at *18 (arbitration clause allowing fifty claims to proceed in first round, one hundred in second round, and two hundred in third round and ability for remaining claimants to elect court proceedings did not engender improper delay); *McGrath v. DoorDash, Inc.*, 2020 WL 6526129, at *4 (N.D. Cal. Nov. 5, 2020) (one round of 10 cases, followed by court or arbitration); *Burkhardt v. Extra Space Mgmt., Inc.*, 2025 WL 2172287, at *5 (E.D. Cal. July 30, 2025) (one round of 10 cases, followed by batching, with all parties allowed to opt out of arbitration and proceed in court instead).

Procedures like these make sense; as the Ninth Circuit has explained in an analogous setting, the approach taken by some plaintiffs' counsel "casts serious doubt over the true motivation underlying the mass-arbitration tactic deployed here, which appears to be geared more toward racking up procedural costs to the point of forcing [Defendant] to capitulate to a settlement than proving the allegations . . . to seek appropriate redress on the merits." *Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1183 (9th Cir. 2025).

Indeed, the staging procedures at issue here are similar to the process used in MDL proceedings "to 'promote the just and efficient' resolution of a large number of similar cases," where a subset of "bellwether trials" are conducted "'to provide data points for settlement discussions with respect to the universe of cases' within the MDL," while the other cases are stayed. *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Technology & Versys Femoral Head Prods. Liab. Litig.*, 2021 WL 5963392, at *1 (S.D.N.Y. Dec. 16, 2021) (citations omitted); *see also* Transcript 38, 40, *Tubi, Inc. v. Keller Postman LLC*, No. 1:24-cv-01616 (D.D.C. Dec. 19, 2024), Dkt. No. 29 (court urged the parties to arbitrate "5 to 10," "bellwether arbitrations," which the parties agreed to do).[8] Plaintiffs here offer no reason why their disputes could not be resolved through

[8] Courts have successfully used this approach to resolve many cases quickly. Since Congress passed the MDL statute in 1968, transferee courts have remanded back to the originating courts only 1.3% of all consolidated cases. *See* U.S. JPML, *Statistical Analysis of Multidistrict Litigation Under 28 U.S.C. § 1407 Fiscal Year 2025* at 3 (2026), https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Fiscal_Year_2025_Statistical_Analysis.pdf. Moreover, the first bellwether in MDL proceedings often is not even scheduled until three years have passed. *See, e.g.*, *In re Generic Pharms. Pricing Antitrust Litig.*, 2025 WL 478178, at *5 (E.D. Pa. Feb. 12, 2025) (nine years before first bellwether), *appeal filed*, No. 25-2221 (3d Cir. July 8, 2025); *Minton v. Intercontinental Terminals Co.*, 2023 WL 11857612, at *1 (S.D. Tex. Sep. 11, 2023) (four years). Statistics show that cases tried in MDL proceedings since 2009 required a median of 1,531

PayPal's process, nor do they explain how a process modeled after one regularly used by courts could be unconscionable—especially when claimants can choose to go to court after two stages of arbitrations take place. Rather, as one California state court judge recently explained, the "existence of some permissible delay, if any, is attributable to the volume of claims a law firm chooses to present at once and not to the mass arbitration procedures, which permissibly provide the necessary structure for the orderly handling of arbitration demands." *Kennedy v. Lyft, Inc.*, No. CGC-25-630920, slip op. at 17 (Cal. Super. Ct., S.F. Cnty. May 19, 2026) (rejecting unconscionability challenge).[9]

b. *The Arbitration Agreement Tolls Applicable Limitations Periods*.

Significantly, the Arbitration Agreement in the Current User Agreement tolls any applicable limitations periods (including statutes of limitations) during the informal dispute resolution process and then tolls them further (for mass arbitrations) from the time that a dispute is first submitted to arbitration until it is "selected to proceed as part of the staged process set forth below or is settled, withdrawn, otherwise resolved, or opted out of arbitration pursuant to this provision." Compl. Ex. B at 60, 64. This prevents claims from becoming time-barred during the informal dispute and staging processes. *See Pilon*, 769 F. Supp. 3d at 297; *Brooks*, 2024 WL 3330305, at *18.[10]

c. Heckman *and* Pandolfi *Are Inapplicable.*

Plaintiffs suggest in the Complaint that they intend to rely on *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), *cert. denied*, 146 S. Ct. 96 (2025), but *Heckman* has no bearing on the enforceability of the Current User Agreement. First, New York law—not California law—applies to Plaintiffs' unconscionability challenge. *See* pages 11-12, *supra*; *Pilon*, 769 F. Supp. 3d at 298 ("*Heckman* concerned an unconscionability challenge to mass-filing arbitration provisions under California law, not New York law . . . ."). Second, *Heckman* is limited

days—over four years—to resolve. Quinn Decl. Ex. 1 at 6 (citing statistics obtained via Lex Machina).

[9] In addition, as a practical matter, even the largest arbitration providers do not have enough arbitrators to allow many thousands of arbitrations to be tried at once, even if Plaintiffs' counsel really could handle such volume. And users who choose to participate in mass arbitration pursuant to the terms of PayPal's Current User Agreement will **benefit** from the available paths to resolution, including the mandatory mediations at PayPal's expense—something that is not available in court.

[10] *See also Ruiz v. CarMax Auto Superstores, Inc.*, 2024 WL 1136332, at *6 (C.D. Cal. Jan. 18, 2024) (because the agreement "provide[d] for the tolling of any applicable statute of limitations," it "constitute[d] a 'system to adjudicate a group of cases with the purpose of facilitating global or widespread resolution'" and was not substantively unconscionable (citation omitted)).

to its unusual facts; in a subsequent case the Ninth Circuit made clear that *Heckman* "concerned novel arbitration procedures" under the rules of New Era, a new arbitration provider, and that the JAMS rules (the ones at issue here) did not "share[] even some of th[e]se defects." *Jones*, 129 F.4th at 1182-83.

Specifically, in *Heckman*, the Ninth Circuit held that early "bellwether" arbitrations would have **binding** precedential effect—that is, **preclusive** effect—on subsequent arbitrations, thus diminishing the rights of later claimants even where they had no notice of the bellwether proceedings and could not be heard. 120 F.4th at 684; *see also Cordero v. Coinbase, Inc.*, 2025 WL 2223495, at *4-5 (N.D. Cal. Aug. 5, 2025) (*Heckman* must be given a "narrow reading" and does not apply when there are "no bellwether or representative proceedings that **bind absent parties**" (emphasis added)). By contrast, PayPal's provision states that rulings in earlier arbitrations **do not** have preclusive effect. *See* Compl. Ex. B at 63. The Ninth Circuit concluded that the agreement in *Heckman* imposed draconian limits on discovery, evidence, and briefing; allowed for appeals of awards only by the company; and purported to override California law on arbitrator selection. 120 F.4th at 685-87. But as the court in *Pilon* explained, "the mass-filing procedures at issue in *Heckman*—and, correspondingly, the unconscionable aspects of it—are not present." 769 F. Supp. 3d at 298. The same is true here.

Likewise, *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754 (N.D. Cal. Sep. 4, 2024) (cited in Compl. ¶ 72), *aff'd*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025), *cert. denied*, 146 S. Ct. 2657 (2026), applied California law and was expressly limited to "the facts of [that] case." *Id.* at *6 & n.4 ("The Court emphasizes that its analysis of the bellwether provision here should not be viewed as a general condemnation of case management strategies for mass arbitrations.").[11] It is also distinguishable because the arbitration agreement at issue contained a delegation clause—"*i.e.*, a clause that specifies that an arbitrator (and not a court) decides certain gateway issues related to arbitrability." *Id.* at *2. In *Pandolfi*, the delegation provision contributed to the "prospect of delay," which in turn caused the

[11] *Pandolfi* was upheld on appeal in an unpublished memorandum opinion, 2025 WL 2463742 (9th Cir. Aug. 27, 2025), which has no precedential effect. *See Carolus*, 2025 WL 3033736, at *13 (declining to read *Pandolfi* expansively because it would be "inconsistent with the nature of memorandum dispositions, which are not intended to create novel legal holdings").

district court to refuse to enforce the provision. *Id.* at *6. Moreover, there was no procedure in *Pandolfi*—as here—that would allow claimants whose claims had not yet been arbitrated to exit arbitration and instead have their dispute heard in court after initial stages of bellwether proceedings. *See* pages 7-8, *supra*; *Pandolfi*, 2024 WL 4051754, at *3 (the "bellwether process shall continue . . . until all the claims included in these coordinated filings, including your case, are adjudicated or otherwise resolved" (citation omitted)).

Here, the Current User Agreement expressly provides for arbitrability challenges to be heard by courts; its staging procedures provide for many more cases to proceed at a time; and significantly, there is an express right to choose to go to court if no global resolution is reached after the first two stages. Compl. Ex. B at 65-66; *see* pages 7-8, *supra*. Thus, the staging procedures in *Pandolfi* are entirely distinguishable from those at issue in the Current User Agreement.

Notably, the district court in *Pandolfi* relied on its prior ruling involving a "similar bellwether provision" in *MacClelland v. Cellco Partnership*, 609 F. Supp. 3d 1024, 1041 (N.D. Cal. 2022). *Pandolfi*, 2024 WL 4051754, at *3. *MacClelland* distinguished the perpetual-staging approach (which that court deemed unconscionable) from limited-staging approaches like PayPal's (which it endorsed). Specifically, the *MacClelland* court explained: "This case stands in stark contrast to *McGrath v. DoorDash*," which involved a "mass arbitration provision modeled off of the Employment-Related Mass Claims Protocol of the International Institute for Conflict Prevention & Resolution (CPR)." 609 F. Supp. 3d at 1043 (citing *McGrath*, 2020 WL 6526129, at *4). The CPR rules are substantially similar to PayPal's mass arbitration provision and were adopted in accordance with CPR's guiding principles of "[f]undamental [f]airness" and "[i]ndependence and [i]mpartiality."[12] They provide for a stage of initial cases that proceed to arbitration, mandatory mediation, and the right to opt out of arbitration and proceed in court if the remaining cases are not resolved after mediation. *See* pages 7-8, *supra*. As *MacClelland* noted, the limited-staging approach considered in *McGrath* "set[s] up a bellwether system to adjudicate a group of cases with the purpose of facilitating global or widespread resolution," and **avoids** the possibility of significant delay. 609

[12] CPR Dispute Resolution Services, *Operating Principles*, https://drs.cpradr.org/about/operating-principles-for-cpr-dispute-resolution-services-llc (last accessed Oct. 30, 2026).

F. Supp. 3d at 1043-44. The same is true of PayPal's clause.

d. *The FAA Preempts Plaintiffs' Unconscionability Challenge to the Staging Procedures.*

The FAA would preempt any holding that the staging procedures are unconscionable under New York law. First, the FAA "preempts any state rule discriminating on its face against arbitration," *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251-52 (2017), and Plaintiffs' unconscionability attacks against staging would operate solely to invalidate arbitration agreements. This impermissibly "target[s] arbitration . . . by name." *Lamps Plus*, 587 U.S. at 188 (citation omitted); *see also Oblix, Inc. v. Winiecki*, 374 F.3d 488, 492 (7th Cir. 2004) (FAA forbids states from applying "any novel rule" to invalidate "arbitration agreements"). Second, a state law rule against staging procedures would obstruct "the full purposes and objectives of Congress" in enacting the FAA—which was to "ensure the enforcement of arbitration agreements according to their terms" and "to promote arbitration." *Concepcion*, 563 U.S. at 344-45, 352 (citation omitted). Specifically, such a rule improperly strips parties of their "discretion in designing arbitration processes" that are "tailored to the type[s] of dispute" and instead forces companies to face large numbers of unsupportable and unvetted claims. *Id.* at 344-45, 352; *see also Pilon*, 769 F. Supp. 3d at 297 (upholding staging procedures that prevented mass claimants from manipulating arbitration fee structures to extract "windfall settlement[s] untethered to the merit of those claimants' claims" (citation omitted)).

**2. Courts Routinely Enforce Agreements that Apply Retroactively.**

While Plaintiffs also attack the retroactivity provisions of the Arbitration Agreement (*see* Compl. ¶ 66(E)), New York courts routinely enforce arbitration agreements with respect to claims that have already accrued, including those already pending in another arbitral forum. *See, e.g.*, *Pilon*, 769 F. Supp. 3d at 291 (enforcing updated arbitration agreement that by its terms applied retroactively to mass arbitration claimants who provided notice of their claims before agreeing to updated agreement);[13] *Brooks*, 2024 WL 3330305, at *2, *18-19 (enforcing updated arbitration

[13] While Plaintiffs refer to the Prior User Agreement (Compl. ¶¶ 66(E), (G)), the Current User Agreement expressly states that the new terms supersede and replace the prior terms. *Id.* Ex. B at 67. For that reason, the court in *Pilon* rejected the same argument, explaining that "even if [Plaintiff] had no reason to expect retroactive arbitration provisions in light of the [prior] Agreement, he had

agreement that by its terms applied retroactively to customers who assented to update); *Trudeau v. Google LLC*, 816 F. App'x 68, 70 (9th Cir. 2020) (unpublished decision) (enforcing arbitration agreement covering claims that had accrued before agreement went into effect); *SCPS LLC v. Kind Law*, 2026 WL 96898, at *9-10 (C.D. Cal. Jan. 8, 2026) (enforcing updated arbitration agreement that selected new arbitration provider because (i) the claimants received notice of the updated agreement and assented to it and (ii) the updated agreement by its terms applied to already accrued, pending claims, and noting that "**the result would be the same even if the [claimants] had assented [to the updated agreement] after initiating arbitrations with the AAA**" (emphasis added)); *see also Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *1-5 (9th Cir. Mar. 3, 2026) (unpublished decision) (enforcing updated terms with respect to plaintiffs' pending claims); Complaint, *Ireland-Gordy v. Tile, Inc.*, No. 3:23-cv-04119-RFL (N.D. Cal. filed Aug. 14, 2023), Dkt. No. 1; *Majidi-Ahy v. ClassPass, Inc.*, 2026 WL 585465, at *8 (C.D. Cal. Feb. 11, 2026) ("The Ninth Circuit consistently upholds the enforceability of the retroactivity of arbitration clauses." (citation omitted)).[14]

By contrast, in *Heckman*, the Ticketmaster terms at issue permitted unilateral modification "**without prior notice**." 120 F.4th at 682 (emphasis added). Thus, it was "nearly impossible to avoid retroactive application of any changes Ticketmaster impose[d]," because Ticketmaster's terms provided that even those who merely browse the website—without purchasing a ticket—agreed to the changed terms. *Id.* at 678, 682. Not so here. Plaintiffs were given notice that if they did not want the terms in the Current User Agreement to apply to any disputes that arose prior to the new terms' effective date, they were required to close their accounts prior to that date. Compl. Ex. B at 67; *see also Trudeau*, 816 F. App'x at 70 (superseding arbitration agreement was "adopted by bilateral agreement between [plaintiff] and [defendant]"); *Garcia v. Citibank, N.A.*, 2019 WL 2902499, at *4 (C.D. Cal. Feb. 13, 2019) ("Despite having a meaningful choice to reject the new

---

plenty of reason—according to the law of inquiry notice—to expect new terms in that contract, and if he had read it, he would have found the retroactive provisions." 769 F. Supp. 3d at 290.

[14] *See also Picha v. Gemini Tr. Co.*, 2024 WL 967182 (S.D.N.Y. Mar. 5, 2024) (compelling arbitration under agreement that was updated two weeks before the plaintiffs filed suit where defendant provided email notice of the updated terms); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 551 (S.D.N.Y. 2018) (terms implemented in 2011, and modified in 2014 and 2015, applied to claims that accrued in 2009); *Lai Chan v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*, 180 F. Supp. 3d 236, 241 (S.D.N.Y. 2016) ("The Second Circuit has indicated that . . . an arbitration provision may cover claims that accrued prior to the execution of the agreement to arbitrate.").

arbitration provision, Plaintiff [did not and] continued to use his credit cards . . . .").

**3. Plaintiffs' Remaining Substantive Unconscionability Arguments Fail.**

***Handwritten Signature Requirements***. Plaintiffs object that the Current User Agreement requires a Notice of Dispute to bear "an original handwritten signature." Compl. ¶ 66(A). But this applies equally to both parties (*see* Compl. Ex. B at 61) and is a reasonable authentication measure to reduce the risk of fraudulent or unauthorized filings; no individual plaintiff could reasonably complain that the requirement is an onerous one. *See Brooks*, 2024 WL 3330305, at *18 n.9 (requirement to prepare and personally sign notice of dispute was not "onerous or beyond the reasonable expectation of the user" (citation omitted)); *In re TikTok, Inc. Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1092-93 (N.D. Ill. 2021) (requiring individuals who wished to opt out of class settlement to submit personally signed forms); *In re AT&T Inc. Customer Data Sec. Breach Litig.*, 2026 WL 2970201, at *22 (N.D. Tex. Oct. 2, 2026) (wet ink signature requirement to opt out of settlement not unduly burdensome and serves legitimate purposes). Similarly, there is nothing burdensome about asking an individual user to provide a signed authorization before account records are shared with a claimant's counsel; indeed, that requirement promotes the very types of privacy interests that Plaintiffs say they are seeking to vindicate here. Rather, it is Plaintiffs' counsel who wish to avoid the handwritten signature requirements because they are required to expend resources communicating with their clients, which disrupts their mass arbitration business model.

***Informal Dispute Resolution Period***. Plaintiffs next claim that extending the informal dispute resolution period from 45 to 60 days and allowing PayPal to request a conference is unreasonable. Compl. ¶ 66(B). But such provisions are "commonplace" and not unconscionable, *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023); to the contrary, such provisions are favorable to consumers because they facilitate the resolution of customer concerns.[15]

[15] *See also Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 732 (4th Cir. 2025) (holding that there is "nothing unreasonable, let alone unconscionable, about such a provision," which "serves a commercially reasonable purpose by allowing both parties the opportunity to resolve disputes informally without incurring the expense of arbitration"); *Concepcion*, 563 U.S. at 336-37, 352 (similar requirement viewed as a benefit to consumers, not a burden); *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (2013) (holding that a bilateral 60-day cooling-off period, which may save both parties the cost and burden of arbitration, "plainly does not 'shock the conscience' so as to vitiate the arbitration agreement").

***Opt-Out Rights***. Because the opt-out mechanism is available only to a user who provides notice within 30 days of that user's first acceptance of a Venmo user agreement, Plaintiffs complain that existing users are not permitted to opt out of amended terms, but instead must close their accounts if they wish to reject the new terms. Compl. ¶ 66(F). But Plaintiffs do not dispute that they could have opted out of arbitration entirely pursuant to the May 2022 user agreement (*see* page 3, *supra*). In any event, courts have repeatedly upheld agreements that require users to close their accounts if they wish to decline new terms offered by a service or platform. *See, e.g.*, *Cordero*, 2025 WL 2223495, at *7 (no unconscionability where users were given the option to close their account if they objected to the terms of updated user agreement); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1176 (N.D. Cal. 2012) ("[C]ontinued use or failure to opt out of a card account [*i.e.*, close the account] after the issuer provides a change in terms, including an arbitration agreement, evidences the cardholder's acceptance of those terms.") (collecting cases).

***Certification of Compliance Requirement***. Plaintiffs next challenge the requirement that an arbitration demand be accompanied by "a certification of compliance" with the informal dispute resolution process. Compl. ¶ 66(H). This requirement is no different from certifications that courts often require to ensure that parties have adequately met and conferred before raising a dispute with the court. *See, e.g.*, C.D. Cal. Local Rule 7-3 (requiring conference of counsel before filing motions and a "declaration, under penalty of perjury," by counsel for the moving party describing the conference). It is also no different than commonplace statutory requirements to plead exhaustion of administrative remedies before proceeding in court. *See, e.g.*, *Lohbeck v. Amazon.com Servs., LLC*, 2026 WL 2455257, at *6 (E.D. Cal. Aug. 21, 2026) ("A plaintiff must affirmatively plead exhaustion of administrative remedies" under California's FEHA); *Fort Bend County v. Davis*, 587 U.S. 541, 543 (2019) ("As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the Equal Employment Opportunity Commission . . . ."). Analogous requirements for arbitration cannot be substantively unconscionable.

***Elimination of Complete Fee Subsidy for Claims Under $10,000***. Finally, Plaintiffs argue that replacing PayPal's unconditional obligation to pay **all** arbitration fees for claims under $10,000

with the selection of JAMS's default fee schedule and a commitment to "work together in good faith to ensure that arbitration remains cost-effective" renders arbitration "prohibitively expensive." Compl. ¶¶ 67-68. But Plaintiffs have not alleged what fees they would actually face, or that those fees would be prohibitive in their individual cases. *See Lai Chan*, 180 F. Supp. 3d at 241 ("Where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." (citation omitted)); *see also Pilon*, 769 F. Supp. 3d at 297 (reverting to a procedure "that prevents th[e] manipulation of the arbitral forum's fee structure, even if overcorrecting, is not substantively unreasonable as to be unconscionable"). Moreover, payment of fees is governed by the JAMS Rules and fee schedule (Compl. Ex. B at 63), which expressly provide for fee waivers based on financial hardship and cap filing fees for consumers. At most, a consumer would be responsible for $250 in arbitration fees (which is less than federal court and many state court filings fees) with the business being responsible for all other fees. *See* Quinn Decl. Exs. 2 and 3.

**4. Most of the Challenged Terms Are Severable.**

Even if the Court were to conclude that any of the challenged provisions—apart from the "Additional Procedures for Mass Arbitration" (Compl. Ex. B at 63-66), which are non-severable because they are indispensable features of the updated agreement to arbitrate—are unenforceable, the remedy under New York law would be to sever the provision, not to deny arbitration altogether.[16] "Even if [certain] provisions were unconscionable, an unconscionable provision can be severed from the agreement and the remaining portions upheld if the provision is isolated and does not go to the core of the agreement." *Curtis v. JPMorgan Chase Bank, N.A.*, 2024 WL 283474, at *5 (S.D.N.Y. Jan. 25, 2024) (collecting cases); *see also Rolle v. VisionPro Connections Inc.*, 2025 WL 1309418, at *7 (E.D.N.Y. Jan. 31, 2025) (severability clause "underscore[d] that the Agreement is at its core one to arbitrate, and thus, non-essential terms can be severed in order to preserve the parties' agreement to submit their disputes to arbitration"). Likewise, under California law, there is a "strong

[16] The mass arbitration procedures are not severable from the arbitration provision in the Current User Agreement because they are central to that provision's goal of facilitating fair and streamlined individual arbitrations while avoiding improper abuses of mass arbitration (such as those criticized by the Ninth Circuit in *Jones*). *See Jones*, 129 F.4th at 1182-83.

preference" for severance over wholesale invalidation. *Poublon*, 846 F.3d at 1272 (citation omitted); *see also* Cal. Civ. Code § 1599; *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 513-15 (2024).

Here, the Current User Agreement is "unfailingly clear in that the parties intended to submit their disputes to arbitration." *Rolle*, 2025 WL 1309418, at *7; *see also Poublon*, 846 F.3d at 1272 (challenged provisions were "collateral to the main purpose of the contract," which was to resolve disputes by individual arbitration (citation omitted)). Moreover, the Current User Agreement contains an express severability clause, *see* Compl. Ex. B at 73, which courts have treated as weighing in favor of severance. *See Ramirez*, 16 Cal. 5th at 517 (when a contract "contains a severance clause," courts "should take it into account"); *Ortiz v. T-Mobile USA, Inc.*, 2026 WL 712958, at *2 (C.D. Cal. Mar. 9, 2026) (severing the staging provision and compelling arbitration, particularly given the express severability clause). Thus, even if any of the ancillary provisions of the Arbitration Agreement (apart from the additional procedures for mass arbitrations) were unconscionable—and they are not—they "do not render the agreement to arbitrate itself unenforceable." *Curtis*, 2024 WL 283474, at *5.

**III. Even if the Current Arbitration Agreement Were Deemed Unconscionable in Its Entirety, Plaintiffs Must Arbitrate Under Their Earlier Arbitration Agreements.**

Even if the Arbitration Agreement in the Current User Agreement were unenforceable **in its entirety**, Plaintiffs still must arbitrate pursuant to the terms of their prior user agreements with Venmo. "[W]hen a modification or substitution [of an agreement] is void for failure to meet the requirements of a valid contract"—such as when changes to terms are held unconscionable—"then the modification or substitution is unenforceable and the prior contract is revived." *Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1067, 1071 (S.D. Cal. 1999). Courts have applied this principle in the context of successful unconscionability challenges to arbitration agreements, holding that the prior agreement then remains in force.[17]

The decision in *Olsen* is instructive; there, the court held that an updated arbitration agreement applied, but even if the updated terms were unenforceable, all plaintiffs who agreed to the

[17] *See, e.g.*, *Rejuso v. Brookdale Senior Living Cmtys., Inc.*, 2018 WL 6173384, at *4 (C.D. Cal. Nov. 13, 2018) (court's determination that newer arbitration agreement was unconscionable revived parties' earlier arbitration agreements); *Olsen*, 2019 WL 3779190, at *6-7.

arbitration provisions in prior sets of terms were required to arbitrate. *See* 2019 WL 3779190, at *7. Thus, "whether under the Updated Terms or the Legacy Terms, the parties entered into valid agreements to arbitrate." *Id.*

So too here. Plaintiffs agreed to arbitrate beginning with their acceptance of the Venmo User Agreement and through the duration of the immediately prior user agreement. *See* pages 2-6, *supra*. Plaintiffs concede that the terms of the Prior User Agreement lack the features of the current arbitration provision that Plaintiffs challenge here. Compl. ¶ 65. Accordingly, Plaintiffs' agreement to arbitrate in the Prior User Agreement is enforceable in the event that the Court declines to enforce the current Arbitration Agreement.

## IV. This Action Must Be Stayed Pending Arbitration.

Under the FAA, in any lawsuit "referable to arbitration," as here, the court "**shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). As the Supreme Court recently held: "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Because Plaintiffs' claims must be arbitrated and PayPal has requested a stay, this action must be stayed pending the outcome of any arbitration.

## CONCLUSION

For the reasons above, this Court should (i) compel Plaintiffs to arbitrate their claims on an individual basis in accordance with the Arbitration Agreement in the Current User Agreement—or, in the alternative, the provision in the Prior User Agreement; and (ii) stay this action.

DATED: October 30, 2026

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Archis A. Parasharami*
Archis A. Parasharami

*Counsel for Defendant PayPal, Inc.*